# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Dowd*, 2013 IL App (3d) 120140

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF SHARON DOWD, Petitioner-Appellant, and MICHAEL DOWD, Respondent-Appellee. |
| District & No. | Third District<br>Docket No. 3-12-0140 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | May 1, 2013<br><br>June 20, 2013<br>June 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from a judgment dissolving the parties' marriage, the trial court's award of 20% of respondent's bonuses between $50,000 and $100,000 per year and none of the bonuses over $100,000 and the denial of her request for attorney fees were affirmed, since both parties had significant assets, and under the circumstances, the trial court's decision was not an abuse of discretion. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-D-950; the Hon. Robert Baron, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Howard M. LeVine (argued), Ross B. Shugan, and Brian W. Reidy, all of LeVine, Wittenberg, Shugan & Schatz, Ltd., of Tinley Park, for appellant.

Gregory Jumbeck (argued), of Reich, Jumbeck & Associates, LLP, of Joliet, for appellee.

Panel

PRESIDING JUSTICE WRIGHT delivered the judgment of the court, with opinion.

Justices McDade and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    On August 3, 2011, the trial court entered a judgment dissolving the marriage of petitioner, Sharon Dowd, and respondent, Michael Dowd. On appeal, Sharon argues the trial court abused its discretion by awarding her only 20% of Michael's bonuses between $50,001 and $100,000 per year, and failing to award her any share of Michael's bonuses exceeding $100,000 each year in her maintenance award. Sharon also argues the trial court erred by denying her petition for contribution to attorney fees. We affirm.

¶ 2                                    FACTS

¶ 3    The parties were married on September 14, 1990. No children were born during this marriage, a second marriage for each party. However, during the course of her marriage to Michael, Sharon assisted in raising Michael's daughter from his first marriage.

¶ 4    On May 14, 2010, Sharon filed a petition for dissolution of marriage citing irreconcilable differences. By agreement, the trial court entered a temporary order requiring Michael to pay certain expenses pending resolution of all issues, including payments for the mortgage on the marital residence and $2,200 in monthly temporary maintenance to Sharon.

¶ 5    Ultimately, the parties resolved a majority of the dissolution issues by agreement but could not agree on the amount for maintenance. Therefore, the court scheduled a hearing for April 20, 2011 regarding any remaining contested issues. On that date, Michael filed a counterpetition for dissolution of marriage.

¶ 6    During the April 20, 2011 hearing, the court learned that Michael was currently employed as director of operations for City Beverage Illinois and had been employed by City Beverage, or its predecessors, since April 1984. Michael's base salary from 2006 through 2010 was $150,000, but in April 2011, it increased to $165,000. According to Michael's testimony,

Michael earned $290,000[1] in total gross income for 2010, including $145,000 in gross bonuses. Michael testified that he is eligible to receive a bonus of up to $100,000 each year.[2] Michael testified that his current monthly income totaled $28,697.16,[3] including annual bonuses, and his monthly expenses totaled $7,167.61. He anticipated his postdivorce monthly expenses to be $3,262. The balance on Michael's 401(k) plan as of March 24, 2011 was $274,135.06.

¶ 7        The court also heard testimony from Sharon indicating she sold real estate on a part-time basis prior to, and during, the marriage, until 2005. In August 2010, Sharon began working at Salem Village Nursing Home and continued to work there between 24 and 32 hours each week for an hourly wage of $11. She hoped to increased her hours at the nursing in the near future, but explained she did not have plans to renew her real estate license because it required her to attend an 8- to 12-week program, which would be difficult while maintaining her employment at the nursing home. Sharon stated she suffers from reduced mobility in her left ankle, arthritis in her knee and hip, high blood pressure, a slow thyroid, and a goiter.

¶ 8        Sharon testified before the court regarding her financial contributions to the marriage. She stated that when her marriage to Michael began in 1990, her personal savings account contained approximately $58,000, representing her share of the proceeds from the sale of the home from her previous marriage. During the marriage, Sharon received an inheritance of approximately $90,000 in 1993, more than $216,000 in 2002, and an additional $430,000 in 2005. The parties agreed Sharon used $22,000 from her personal savings account to purchase the lot for the home constructed by Michael and Sharon on Ryehill Drive in Joliet, Illinois, which the couple occupied for 12 years. According to Sharon's testimony, she spent her $90,000 inheritance fund, received three years after her marriage to Michael, on a new sport utility vehicle and other expenses to remodel the basement of the couple's residence on Ryehill Drive.

¶ 9        The parties stipulated that in 2001, they built a home on Schoolhouse Road in Manhattan, Illinois, for $629,000. The couple used $124,768.31 from marital funds and $184,231.69 from Sharon's nonmarital inheritance funds and secured a $320,000 mortgage for the balance for this project. The parties refinanced the Schoolhouse Road home in 2005 for $225,524, with Sharon contributing another $105,666.20 from her recent and substantial inheritance funds. As of April 20, 2011, the mortgage balance on the home was $68,000, and the home was listed for sale at $499,000.

---

[1]On cross-examination, Michael acknowledged that a statement of his earnings from City Beverage showed his 2010 gross income to be $295,887.66, but that his 2010 W-2 showed his gross income to be $290,497.72, but could not explain the discrepancy.

[2]In 2010, however, Michael received more than $100,000 in bonuses due to a sale involving City Beverage and Michael's work related to that sale.

[3]Michael's subsequent testimony indicated this figure was a miscalculation based off of his weekly gross income, which was $2,884.62 per week. Due to the error, Michael's monthly gross income was closer to $29,500.

¶ 10    The parties stipulated that, as of April 20, 2011, Sharon had nonmarital property with a total value of $134,356, in the form of various accounts and a horse trailer. Sharon also owned an interest in a 40-acre parcel of property, valued at $16,000, located in Yavapai, Arizona, which she purchased with her parents. She explained to the court that she owned a 50% interest, plus one-third interest in the remaining 50%, pending the settlement of her parents' estate.

¶ 11    The parties also owned a 50% interest in a Scottsdale, Arizona condominium, purchased in 2005 for $170,000, which was paid from Sharon's inheritance money. The value of the condo as of April 20, 2011 was approximately $150,000, with the parties' 50% interest being $75,000. The parties agreed that Michael would purchase Sharon's interest in the condo for $37,500.

¶ 12    As to her current expenses, Sharon stated she spent $3,134 each month, to cover her groceries, utilities, vehicle expenses, and animal care costs, and excluding the expenses Michael was court-ordered to pay. Once the Schoolhouse Road home sold, Sharon expected her monthly expenses to be $7,515, without considering any amount to be designated for purposes of her future retirement. Sharon testified she would be required to board her horses upon the sale of the Schoolhouse Road home, creating an additional $1,000 monthly expense. Sharon anticipated her mortgage expense, postdivorce, to be approximately $1,900 per month and that she planned to purchase a one-bedroom condo in Arizona for "low 60s to low 70s" resulting in a $400 monthly expense. After hearing arguments, the trial court took the matter under advisement.

¶ 13    On June 28, 2011, Sharon filed a petition for contribution to attorney fees and costs requesting the court to order Michael to pay $29,052.88. At the time of the petition, Sharon had already paid $22,500 to her attorney, leaving a remaining balance of $6,552.88.

¶ 14    Also on June 28, 2011, the trial court entered a written decision which determined Michael should pay $6,100 per month to Sharon as maintenance for the next five years and reviewable thereafter. In addition, the court decided that Sharon should receive 50% of Michael's annual bonuses up to $50,000, 20% of his annual bonuses between $50,001 and $100,000, and no portion of his annual bonuses above $100,000. The court denied Sharon's request for contribution to her attorney fees.

¶ 15    On August 3, 2011, the trial court entered a judgment for dissolution of marriage, incorporating its June 28, 2011 written decision and the parties' agreements concerning the disposition of other property. At the time of the judgment, both Sharon and Michael were 55 years of age. Pursuant to the judgment, Sharon was awarded the following: (1) $6,100 per month in maintenance; (2) 54% of the marital estate, including 54% of the net sales price of the marital home less $5,500; (3) nonmarital property valued at approximately $134,000 including multiple accounts; (4) 50% of the parties' cash accounts and 401(k) account; (5) the Kubota trailer, ATV, Ford F250, Acura and vacant Arizona land, valued in total at $70,000; (6) $37,500 from Michael, representing Sharon's interest in the Arizona condo; and (7) specific personal property from the Arizona condo as agreed. In total, Sharon received approximately half of the $1 million in marital assets, and she received her nonmarital property in the amount of $134,356.

¶ 16    Michael received the following: (1) 46% of the marital estate, including 46% of the net sales price of the marital home, plus $5,500 credit before the division of the proceeds for repair costs; (2) nonmarital property consisting of two life insurance policies; (3) 50% of the parties' cash accounts and 401(k) account; and (4) the Arizona condo after a $37,500 payment to Sharon for her interest.

¶ 17    On August 15, 2011, Sharon filed a motion to reconsider the judgment for dissolution of marriage arguing the trial court committed six errors, including, in relevant part, that the trial court erred when it ordered that Sharon would only receive 20% of Michael's bonuses from $50,001 to $100,000 and denied her request for attorney fees. On January 19, 2012, the trial court conducted a hearing on Sharon's motion to reconsider. After arguments, the trial court specifically noted:

> "I thought this case over very seriously. I spent a lot of time on this case. I did what I did for good reason.
>
> Just so, you know, I didn't give her a bigger percentage out of his second bonus because in the final analysis, I thought to myself, I know I gotta take care of her for a long time.
>
> But I also gotta give him the incentive to keep working. And I couldn't think of a better way to keep him [*sic*] incentive to work hard and just think to think that at least if he gets a second bonus by working hard, he can share a little bit larger share.
>
> And that was my motivation there. I think it was a good motivation, and I intend to stand by it."

¶ 18    The trial court granted Sharon's motion to reconsider regarding two issues not relevant to this appeal, but denied her requests to be awarded a greater share of Michael's bonuses and for attorney fees. Sharon appeals.

¶ 19                                           ANALYSIS

¶ 20    On appeal, Sharon argues the trial court abused its discretion by awarding her 20% of Michael's bonuses between $50,001 and $100,000 without providing her with any share of Michael's bonuses above $100,000. She also contends the court erroneously denied her request for contribution to her attorney fees. Sharon requests this court award her 50% of all of Michael's bonuses, or in the alternative, to remand the case to the trial court to determine her proper share of Michael's bonuses. Michael responds that the trial court's rulings were proper.

¶ 21    The trial court is allowed broad discretion to determine the propriety, amount, and duration of maintenance, and its judgment will not be reversed absent an abuse of discretion. *In re Marriage of Rogers*, 352 Ill. App. 3d 896, 899 (2004). An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful or unreasonable, or no reasonable person could find as the trial court did. *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 199 (2011).

¶ 22    The benchmark for a determination of maintenance is the reasonable needs of a spouse in view of the standard of living established during the marriage as well as the duration of

the marriage, the ability to become self-supporting, and the lack of an income-producing spouse. *In re Marriage of Selinger*, 351 Ill. App. 3d 611, 620 (2004). Importantly, the trial court must consider all of the relevant statutory factors in establishing a maintenance award, but it need not make specific findings as to the reasons for its decision. *In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1004 (2008).

¶ 23    Section 504 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/101 *et seq.* (West 2010)) lists 12 enumerated factors to be considered when a trial court renders an award of maintenance. 750 ILCS 5/504 (West 2010). In this case, the court received evidence regarding each spouse's income and expenses. The court also heard testimony regarding the standard of living this couple enjoyed during the course of the marriage and the contributions each person provided to the marriage itself. The trial court issued a detailed written finding regarding the income, assets, financial positions of each party, and the standard of living established during the marriage, which are all statutory factors the court should consider under section 504. 750 ILCS 5/504(a) (West 2010).

¶ 24    Neither party is dissatisfied with the trial court's award of fixed monthly maintenance, excluding bonuses, in the amount of $6,100. With regard to Michael's annual bonuses, the trial court noted it had reviewed this case "very seriously" and developed a graduated approach to Michael's bonuses as an incentive to encourage Michael to maintain his productivity because he would enjoy a larger share of his bonuses.

¶ 25    Further, the record demonstrates that Sharon's reasonable needs will be met when considering the standard of living established during the marriage. In this case, the trial court found that Sharon would need $6,400 to maintain the standard of living she enjoyed during the marriage, a finding that is not challenged on appeal. This amount is easily satisfied when considering Sharon's fixed award of $6,100 and her own income. In spite of the fact that this amount is met, the trial court also allowed Sharon a reasonable share of bonuses while encouraging Michael to work hard because he is not required to share such a large portion of his bonuses above $50,000. Due to the flexibility designed into the court's order, Sharon is eligible to receive up to $35,000 per year in additional maintenance from Michael's potential bonuses, beyond the fixed monthly amount of $6,100.

¶ 26    Based on our careful review of the record, we conclude the court's decision to allow maintenance to be based on a fixed amount plus a graduated percentage of Michael's annual bonus involved a thoughtful, well-reasoned approach, that was fair to each party. Therefore, we conclude the trial court did not abuse its discretion in this case.

¶ 27                    Contribution to Sharon's Attorney Fees

¶ 28    Sharon also contends on appeal the trial court erred by denying her petition for contribution to attorney fees. An award for attorney fees is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *In re Marriage of Morse*, 240 Ill. App. 3d 296, 312 (1993). The propriety of an award of attorney fees is dependent upon a showing by the party seeking them of an inability to pay and a demonstration of the ability of the other spouse to do so. *Id.* In this case, the trial court found that "both parties have sufficient assets to pay their own attorney's fees." We agree. Sharon received property

and accounts valued in excess of $200,000, excluding the value of the marital home and her maintenance award. Based on this record, we conclude Sharon had sufficient income and assets to pay her own attorney fees.

¶ 29                                              CONCLUSION

¶ 30     For the foregoing reasons we affirm the trial court's rulings regarding the award of Michael's bonuses and the denial of Sharon's petition for contribution to attorney fees.

¶ 31     The judgment of the circuit court of Will County is affirmed.

¶ 32     Affirmed.