2021 IL App (1st) 192345-U

SIXTH DIVISION
June 25, 2021

Nos. 1-19-2345 & 1-20-0723 cons.

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF DAVIN T. POWER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| and | ) | No. 14 D 6709 |
| | ) | |
| DANIELLE ETHIER, | ) | Honorable |
| | ) | John Thomas Carr, |
| Respondent-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Oden Johnson concurred in the judgment.

## O R D E R

¶ 1    *Held*: Trial court did not abuse its discretion where its awards to respondent of attorney fees and needs-based child support were reasonable and supported by the record; trial court's decision not to award needs-based child support retroactively was also not an abuse of discretion.

¶ 2    Petitioner Davin Power and respondent Danielle Ethier, who have three minor children together, divorced on November 4, 2015. As part of the divorce judgment, Ms. Ethier was awarded $5500 per month in child support. Following a change in employment, Mr. Power moved to modify his child support obligation. During the resulting postjudgment proceeding, Ms. Ethier

petitioned for attorney fees and moved for needs-based child support. The court awarded Ms. Ethier $24,000 in attorney fees (case No. 1-19-2345) and entered an order for needs-based child support in the amount of $1900 per month (case No. 1-20-0723). Mr. Power challenges both awards on appeal, arguing that the trial court's rulings, including its refusal to retroactively apply the child support modification from the point when Mr. Power filed his petition for modification, were abuses of discretion. We consolidated the appeals on our own motion.

¶ 3    For the following reasons, we affirm the orders of the trial court.

¶ 4                                    I. BACKGROUND

¶ 5    Mr. Power and Ms. Ethier were married on January 12, 2008. On July 22, 2014, Mr. Power filed a petition for dissolution of marriage, citing irreconcilable differences. A custody judgment was entered on November 13, 2014, awarding the parties joint custody of their three minor children and designating Ms. Ethier as the primary residential parent.

¶ 6    The dissolution judgment was entered almost a year later, on November 4, 2015. At that time, Mr. Power was employed at DigitasLBi, Inc., earning an annual gross salary of $375,000, and Ms. Ethier was not employed. Under the dissolution judgment, Mr. Power was required to pay Ms. Ethier $5500 per month in child support. Pursuant to section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a)(1) (West 2014)), Mr. Power's child support obligation was calculated as 32% of his net income. Beginning on November 15, 2015, and continuing for 42 months, Mr. Power was also required to pay Ms. Ethier $4000 per month in maintenance, an award that, under the divorce judgment, could not be modified as to either its amount or duration. The dissolution judgment acknowledged that one of the parties' three children has "a special need that require[s] therapies, medications, and doctor's visits," the costs of which would be divided equally between Mr. Power and Ms. Ethier.

¶ 7    On July 22, 2016, Mr. Power filed a motion to enforce and modify the custody judgment, requesting that the parties attend mediation and that the court modify the custody judgment to provide that Ms. Ethier would share midweek transportation of the children. Mr. Power subsequently filed a motion to modify child support on July 28, 2016, in which he alleged that he was terminated from DigitasLBi effective August 6, 2016. Mr. Power requested that his child support obligation be modified as a result of this substantial change in his circumstances. Before the court ruled on his motion, however, Mr. Power obtained new employment at Partners by Design, Inc., beginning on January 9, 2017. During the postjudgment proceedings that followed, which are further outlined below, both parties repeatedly moved for sanctions. The court denied all of these motions.

¶ 8    On March 22, 2017, Ms. Ethier filed a petition for interim and prospective attorney fees and costs. She alleged that, as of the date of the petition, she had incurred $29,460.55 in attorney fees and costs and paid $28,008.50 on that debt, leaving a balance of $1452.05. She argued that, as a stay-at-home parent, she lacked the financial ability to pay the fees she had incurred and might continue to incur as a result of the litigation initiated by Mr. Power and that Mr. Power was "well-abled and capable of paying and defraying all costs and expenses incurred" by her. She asked the court to order Mr. Power to pay the $1452.05 due, as well as $10,000 in prospective attorney fees. The court awarded Ms. Ethier $7000 in interim attorney fees.

¶ 9    On May 3, 2017, Ms. Ethier sought a modification of Mr. Power's contribution to child-related expenses, alleging that Mr. Power "unilaterally reduc[ed] his child support obligations" after filing his motion to modify child support in July 2016. She further alleged that Mr. Power had obtained new employment since filing his motion, that he had remarried since their divorce, and that his spouse was gainfully employed and contributed to his living and personal expenses.

¶ 10 On January 5, 2018, Ms. Ethier moved to dismiss Mr. Power's motion to enforce and modify the custody judgment. At the January 9, 2018, hearing, the trial court gave each party 21 days to amend any pending pleadings or to file a fee petition. Mr. Power filed his amended motion to modify child support on January 30, 2018, and Ms. Ethier filed her second petition for interim and prospective attorney fees that same day, alleging that, from December 7, 2015, through January 30, 2018, she had incurred $37,418.30 in attorney fees, of which she still owed $23,299.66. Ms. Ethier alleged that she could not afford to pay this balance and requested that the trial court order Mr. Power to pay it, plus an additional $10,000 in prospective attorney fees.

¶ 11 At a hearing on October 12, 2018, Mr. Power explained to the court that he was withdrawing his motion to enforce and modify the custody judgment and proceeding only on his amended motion to modify child support. At the hearing, both parties submitted financial affidavits to the court and testified regarding their respective finances, expenses, and employment history.

¶ 12 Mr. Power testified that, at the time of the parties' divorce, he worked at DigitasLBi, where he received an annual salary of $375,000. He was terminated from that position effective August 5, 2016, and received a severance package that included 14 weeks of full pay. Mr. Power received unemployment benefits starting "around August or September of 2016" and ending when he began working at Partners by Design, Inc., in January 2017. He testified that his salary at Partners by Design is $200,000.

¶ 13 Mr. Power testified that he paid his monthly child support obligation of $5500 in July, August, September, and October 2016. He testified that he paid support "proportional based on severance" in November, when his severance "was prorated and partially ended right with the end of the month." In December he paid $544 of his child support obligation, "which was the Illinois unemployment benefit for [his] dependents." Further, "starting back in January was another pro

4

rata month based on [his] new income which was prorated 32 percent. And starting February 2017, [he] continued to pay 32 percent of [his] salary from Partners by Design," which he stated was $2664 per month.

¶ 14    Ms. Ethier testified that she was a stay-at-home parent during the marriage and was still unemployed. She was, however, studying to become a life coach at an online school, the Ford Institute, and had a Bachelor of Arts degree from Michigan State University. Her monthly expenses directly attributable to the parties' three children were $1720, and her grocery expenses were $1700. Monthly medical expenses for the three children were $150. She testified that, since Mr. Power had started paying a decreased amount in child support following his termination, she had been forced to supplement her monthly expenses with assets she received in the divorce. She testified that she was unable to meet her monthly expenses by $3,597.25 each month. Ms. Ethier testified that she had $201,000 in her savings account but explained that this was money she received in the divorce and had not used. She instead operated out of her checking account for expenses and deposits. As a result, her inability to meet her monthly expenses was reflected, in part, by a decrease in her checking account balance from $49,000 to $27,000 over the last year. Ms. Ethier testified that her only source of income was the maintenance and child support payments she received from Mr. Power. She further stated that her standard of living had decreased since the divorce, and that after Mr. Power began paying less in child support, she "c[ould not] afford to take [her] kids on vacation because everything ha[d] been reduced" and she was "basically paying the bills, [her] mortgage, and just living expenses for the kids."

¶ 15    On December 14, 2018, the trial court entered an order granting Mr. Power's motion to modify his child support obligation. The court found that Mr. Power's period of unemployment following his termination from DigitasLBi and subsequent employment at Partners by Design,

where he received a smaller salary, was a substantial change of circumstances justifying the modification of his child support obligation. Based on his new income, the court ordered Mr. Power's monthly child support obligation to be reduced from $5500 to $3454, retroactively commencing on January 9, 2017. The court also found, however, that Mr. Power owed $17,150 in arrearages from January 9, 2017, through October 31, 2018, and ordered that, when his maintenance obligation ended on May 15, 2019, his child support obligation would increase to $4477.

¶ 16    On January 14, 2019, Mr. Power filed a motion to reconsider this order, arguing that the court had failed to deduct state income taxes, Social Security, or Medicare from his gross income as part of its calculations.

¶ 17    On March 29, 2019, the trial court held a hearing on Ms. Ethier's second petition for interim and prospective attorney fees and Mr. Power's motion to reconsider the court's December 14, 2018, order. With respect to the petition for fees, Mr. Power argued that Ms. Ethier had $200,000 in her savings account from which she could pay her attorney fees, while Ms. Ethier argued that she was not required to deplete what she had received in their divorce judgment to pay for postjudgment litigation and argued that Mr. Power had "far greater" financial resources than she did and was living in a dual income household with his current spouse. The trial court awarded Ms. Ethier $24,000 in attorney fees and set an April 19, 2019, status hearing for argument on Mr. Power's motion to reconsider and for recalculation of child support payments.

¶ 18    On April 8, 2019, Ms. Ethier began working at Maclyn Group, earning a base salary of $98,000. In response, on April 15, 2019, Mr. Power filed his third petition to modify child support. That same day, he also filed a motion to reconsider the March 29, 2019, order assessing attorney fees, alleging that Ms. Ethier had intentionally misrepresented and concealed her employment

6

status to the court.

¶ 19    On May 6, 2019, the trial court reduced Mr. Power's monthly child support obligation, in response to his motion to reconsider based on a miscalculation, to $2918 per month until his maintenance obligation ended, at which time his child support payment would increase to $3890.

¶ 20    And in light of Ms. Ethier's new employment, on June 12, 2019, the court granted Mr. Power's motion to reconsider the assessment of attorney fees. The court set a date for a hearing for reconsideration of Ms. Ethier's second petition for attorney fees and for consideration of Mr. Power's third petition to modify child support.

¶ 21    At the October 11, 2019, hearing, Mr. Power argued that Ms. Ethier's new employment and its accompanying $98,000 salary, plus an annual bonus, qualified as a substantial change in circumstances. The trial court agreed, and found the change warranted consideration of a support modification. In response, Ms. Ethier moved orally for leave to file a motion to seek needs-based child support, which the trial court granted. As to the attorney fees, the trial court stated that after listening to argument and reviewing the fee petition, Ms. Ethier's updated financial affidavit reflecting her new employment, billing statements, and the applicable law, it "fe[lt] comfortable given the financial circumstances" "that $24,000 [wa]s a reasonable amount to award for fees."

¶ 22    On November 14, 2019, the trial court entered a written order memorializing its award of $24,000 in attorney fees to Ms. Ethier as well as its finding that a substantial change in circumstances had occurred. The court continued the hearing on Mr. Power's petition to modify child support to allow Ms. Ethier to file her motion for needs-based child support.

¶ 23    Ms. Ethier filed her motion on December 6, 2019, alleging the following: she earned a gross base salary of $98,000 and Mr. Power earned a gross base income of $206,271; Mr. Power's current wife contributed to his monthly living expenses; and Mr. Power had a minor child with his

current wife, and he contributed 50% of that child's expenses, amounting to $2500 per month. Ms. Ethier argued that under the guidelines of the Act (see 750 ILCS 5/505(a)(1) (West 2018)), Mr. Power's child support obligation should be reduced from $3890 per month to $739 per month, less than what she said was her monthly grocery bill of $1200 for her and the parties' three children. Ms. Ethier argued that this was "grossly inequitable" and not in the children's best interests because it would leave the "children living in vastly disparate households relative to financial means and lifestyle as they travel between their mother's and father's respective homes." Ms. Ethier also alleged that, as acknowledged in the dissolution judgment, one of their children had special needs and required "weekly therapy and occupational therapy, *** testing, *** supplements," and various doctor visits, including with a psychiatrist. She alleged the child suffered from "behavioral conditions, including but not limited to Attention Deficient Hyperactivity Disorder, Autoimmune Encephalitis, Lyme Disease, Bartonella, Executive Function Disorder and Sensory Processing Disorder." Ms. Ethier alleged that it was in the best interest of the children for the trial court to set a child support obligation of $3890 per month based on the reasonable and necessary needs of the parties' three minor children.

¶ 24    On January 21, 2020, the court held a hearing on Ms. Ethier's motion for needs-based child support and Mr. Power's third petition to modify child support, and the parties submitted guideline support calculations. Ms. Ethier calculated that guideline support should equal $739 per month; Mr. Power maintained it should be $662. In issuing its finding, the trial court stated that it had considered the financial needs of the children, the financial resources of the parties, including the parties' financial affidavits and "the money that is spent on the children," and the standard of living the children would have enjoyed had the marriage not been dissolved. The court noted that it "would be unfair for the father to pay [32% of his income]," but that the guideline child support

amount—either $662 per month or $739 per month—was, "under the circumstances[,] *** too little." The court explained that the special needs of the parties one child was not "any kind of a factor in" its decision, "because [the court did] not see*** that as really contributing to a substantial increase in the expenditures of the mother." The court entered a needs-based child support order, setting Mr. Power's obligation at $1900 per month. Mr. Power requested the award be retroactive to when he "filed [in] April of [20]19," which the court denied, reasoning that doing otherwise would "penalize [Ms. Ethier] by having her repay."

¶ 25    Mr. Power now appeals the court's awards of $24,000 in attorney fees and $1900 per month in needs-based child support.

¶ 26                                    II. JURISDICTION

¶ 27    The trial court entered its order awarding attorney fees to Ms. Ethier on November 14, 2019, and included a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016) that there was no just reason to delay enforcement or appeal. Mr. Power timely filed his notice of appeal from that order the same day. We have jurisdiction over that appeal (case No. 1-19-2345) pursuant to Rule 304(a), governing appeals from final judgments that do not dispose of the entire proceeding.

¶ 28    The trial court entered its final order on the amount of needs-based child support on January 21, 2020, and Mr. Power timely filed his notice of appeal from that order on February 19, 2020. This court has jurisdiction over that appeal (case No. 1-20-0723) pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 29                                    III. ANALYSIS

¶ 30    Mr. Power argues on appeal that the trial court erred in (1) awarding Ms. Ethier $24,000 in attorney fees, (2) ordering needs-based child support, and (3) denying his request to retroactively apply the modification of his child support obligation to the date he filed his third petition for modification. We review each of these rulings for an abuse of discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13 (review of an award of attorney fees); *In re Marriage of Hill*, 2015 IL App (2d) 140345, ¶ 17 (review of needs-based child support order); *Streur v. Streur*, 2011 IL App (1st) 082326, ¶ 13 (review of ruling on retroactivity of child support). "[A]n abuse of discretion will be found only where the trial court's decision is arbitrary, fanciful or unreasonable or where no reasonable [person] would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). For the reasons that follow, we find no abuse of discretion.

¶ 31                          A. Award of $24,000 in Attorney Fees

¶ 32    Mr. Power argues that the court abused its discretion in awarding Ms. Ethier $24,000 in attorney fees because that award was not supported by the evidence. More specifically, he argues that the court ignored the statutory factors it was required to consider, and that Ms. Ethier was not entitled to attorney fees at all because she did not meet the inability to pay standard.

¶ 33    Under the Act, "[t]he court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees." 750 ILCS 5/508(a) (West 2016). Our supreme court has held that, in determining whether to award attorney fees, "[t]he trial court must (1) 'consider[ ] the financial resources of the parties' and (2) make its decision on a petition for contribution 'in accordance with subsection (j) of Section 503.' " *Heroy*, 2017 IL 120205, ¶ 19

10

(quoting 750 ILCS 5/508(a) (West 2014)). Under section 503(j), an award of contribution for one party's attorney fees must be based on the criteria for division of marital property under section 503(d) of the Act and, if maintenance has been awarded, the criteria for an award of maintenance under section 504 of the Act. 750 ILCS 5/503(j)(2) (West 2016).

¶ 34    The criteria for the division of marital property under section 503(d) are:

"(1) each party's contribution to the acquisition, preservation, or increase or decrease in value of the marital or non-marital property ***;

(2) the dissipation by each party of the marital property***;

(3) the value of the property assigned to each spouse;

(4) the duration of the marriage;

(5) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having the primary residence of the children;

(6) any obligations and rights arising from a prior marriage of either party;

(7) any prenuptial or postnuptial agreement of the parties;

(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(9) the custodial provisions for any children;

(10) whether the apportionment is in lieu of or in addition to maintenance;

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(12) the tax consequences of the property division upon the respective economic

11

circumstances of the parties." 750 ILCS 5/503(d)(1)-(12) (West 2016).

¶ 35    The criteria for an award of maintenance under section 504 are:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) the realistic present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or any parental responsibility arrangements and its effect on the party seeking employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences of the property division upon the respective economic

12

circumstances of the parties;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a)(1)-(14) (West 2016).

¶ 36 Our supreme court also clarified in *Heroy* that a "party seeking attorney fees must 'establish her inability to pay and the other spouse's ability to do so.' " *Heroy*, 2017 IL 120205, ¶¶ 15, 19 (quoting *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005)). "[A] party is unable to pay if, after consideration of all the relevant statutory factors, the court finds that requiring the party to pay the entirety of the fees would undermine his or her financial stability." *Id.* ¶ 19. This "inability to pay standard," the court explained, "was never intended to limit awards of attorney fees to those situations in which a party could show a $0 bank balance." *Id.*

¶ 37 Here, it is clear that, contrary to Mr. Power's arguments, the court properly considered both the parties' financial resources and the statutory factors. The court awarded Ms. Ethier $24,000 in attorney fees after receiving the parties' financial affidavits, hearing testimony regarding their finances over the course of several hearings, and considering the parties' arguments. The court viewed $24,000 as a reasonable amount of attorney fees "given the financial circumstances." The record indicates that the court considered the above-mentioned factors, having heard testimony on, for example, the sources of public and private income, the vocational skills and employability of the parties, the standard of living established during the marriage, and the custodial provisions for the children. This evidence supports the trial court's findings.

¶ 38 Ms. Ethier, as of September 16, 2019, still owed $40,107.76 in attorney fees. Her salary

was $98,000 and Mr. Power's salary was $200,000. Mr. Power had $1682 in his checking account, $7750 in his savings account, $143,000 in a brokerage account, $272,000 in an IRA, and $55,500 in his 401(k) account. Ms. Ethier had $28,413 in her checking account, $1106 in her savings account, $200,000 in an investment account she had designated as retirement funds (although Mr. Power disputed that designation), and $65,000 in an IRA. Both parties testified that they were spending more than they were earning, using funds from their savings or checking accounts to pay their respective expenses. Nevertheless, Mr. Power was clearly in a superior financial position, with more assets and an annual salary twice the amount of Ms. Ethier.

¶ 39    Mr. Power insists that the trial court must have completely ignored Ms. Ethier's income, as it awarded her the same amount in attorney fees as it did when she was unemployed. There is simply no indication, however, that the court ignored Ms. Ethier's income. Rather, after the court learned of Ms. Ethier's employment, it vacated its previous award of attorney fees, held a new hearing, and reached the same result. We are not willing to presume on this record that the court disregarded Ms. Ethier's income. *See In re Jonathon C.B.*, 2011 IL 107750, ¶ 72 (we "presume\*\*\* that a trial judge knows and follows the law unless the record affirmatively indicates otherwise").

¶ 40    Mr. Power also argues that "[t]hroughout the parties' post-divorce litigation, [Ms. Ethier] has owned her own home, vehicle, retirement benefits, and has possessed a substantial amount of cash on deposit in her bank accounts." Ms. Ethier's financial affidavit demonstrated that she owed $324,918.85 on her mortgage, and, as Ms. Ethier responds, the spouse seeking attorney fees is not required to divest her capital assets, deplete her means of support, and undermine her economic stability in order to pay those attorney fees. *In re Marriage of Weinberg*, 125 Ill. App. 3d 904, 919 (1984); see also *Simmons v. Simmons*, 87 Ill. App. 3d 651, 661-21 (1980) (trial court did not abuse its discretion in awarding attorney fees where, even though the spouse seeking fees had sufficient

funds to pay her own fees, payment of those fees would deplete her assets); *In re Marriage of Haas*, 215 Ill. App. 3d 959, 987 (1991) (finding abuse of discretion where "it [was] clear that [the former wife] w[ould] be unable to pay her attorney fees and costs without depleting part of the marital assets awarded to her[,]" and where the former husband was able, based on his income and additional bonuses, to pay both his and her fees)

¶ 41    Mr. Power's reliance on *In re Marriage of Dowd*, is misplaced because, like this case, it represents a situation in which we deferred to the trial court. There we affirmed a trial court's denial of attorney fees. *Dowd*, 2013 IL App (3d) 120140, ¶ 28. In *Dowd*, we found that the trial court did not abuse its discretion in denying attorney fees based on its finding that both parties had sufficient assets to pay their own fees. *Id.* Whether the trial court awards fees, as it did here, or denies them, as it did in *Dowd*, our standard of review remains deferential. As in *Dowd*, we cannot find in this case that the trial court's decision was arbitrary, fanciful, or unreasonable.

¶ 42    Finally, Mr. Power argues that "[t]he [trial] court failed to examine how [Ms. Ethier]'s misconduct precipitated the need for litigation causing both parties to incur unnecessary attorney fees." The trial court, in fact, did clearly consider Mr. Power's allegations of Ms. Ethier's misconduct since Mr. Power filed several motions for sanctions, all of which the court denied. Also, the court specifically vacated its earlier award of fees once it learned that Ms. Ethier was employed.

¶ 43    In sum, we cannot say that no reasonable person would award Ms. Ethier $24,000 in attorney fees in these circumstances, and, as such, the court did not abuse its discretion.

¶ 44                    B. Modification to Include Needs-Based Child Support

¶ 45    Mr. Power argues that, following his petition to modify his child support obligation based on the parties' changed circumstances, the trial court abused its discretion by awarding needs-

15

based child support in the amount of $1900 per month to Ms. Ethier instead of the $662 per month she would have been awarded based solely on the statutory guidelines.

¶ 46    Section 505(a)(1) of the Act provides guidelines for calculating the minimum amount of child support owed by a parent. 750 ILCS 5/505(a)(1) (West 2014). At the time of the parties' divorce, the Act required 32% of the supporting party's net income to be paid as child support if the parties had three children together. *Id.* Section 505 was modified multiple times after 2016, and the parties were calculating the support modification as follows:

"The court shall compute the basic child support obligation by taking the following steps:

(A) determine each parent's monthly net income;

(B) add the parents' monthly net incomes together to determine the combined monthly net income of the parents;

(C) select the corresponding appropriate amount from the schedule of basic child support obligations based on the parties' combined monthly net income and number of children of the parties; and

(D) calculate each parent's percentage share of the basic child support obligation."

750 ILCS 5/505(a)(1.5) (West 2018).

¶ 47    The statute further provides:

"The court may deviate from the child support guidelines if the application would be inequitable, unjust, or inappropriate. Any deviation from the guidelines shall be accompanied by written findings by the court specifying the reasons for the deviation and the presumed amount under the child support guidelines without a deviation. These reasons may include:

(A) extraordinary medical expenditures necessary to preserve the life or

16

health of a party or a child of either or both of the parties;

(B) additional expenses incurred for a child subject to the child support order who has special medical, physical, or developmental needs; and

(C) any other factor the court determines should be applied upon a finding that the application of the child support guidelines would be inappropriate, after considering the best interest of the child." 750 ILCS 5/505(a)(3.4) (West 2018).

¶ 48    Here, the trial court determined that guideline-based minimum child support based on Mr. Power's reduced salary and Ms. Ethier's new salary would be "inappropriate" considering the parties' financial circumstances and the standard of living the children had been accustomed to. Mr. Power argues that the court abused its discretion by awarding needs-based child support where (1) good cause did not exist to grant Ms. Ethier leave to file her motion for needs-based child support in the midst of the hearing on his petition to modify child support, (2) the court improperly considered the financial impact of Mr. Power's new wife to support its decision to award needs-based child support, (3) Ms. Ethier failed to present "compelling evidence" to overcome the presumption that guideline child support was appropriate, (4) the court's decision to deviate from the child support guidelines was not accompanied by sufficient findings specifying how application of the guidelines would be inequitable, unjust, or inappropriate, and (5) the court allowed its own personal dislike for the new statutory guidelines to influence its decision to deviate from them when calculating child support. We reject each of these arguments.

¶ 49    First, the trial court did not abuse its discretion in finding good cause to grant Ms. Ethier leave to file her motion for needs-based child support. Mr. Power rests his argument on Illinois Supreme Court Rule 183 which provides: "The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is

17

required by the rules to be done within a limited period, either before or after the expiration of the time." Ill. Sup. Ct. R. 183 (eff. Feb. 16, 2011).

¶ 50    Mr. Power argues that there was no "good cause" where Ms. Ethier's motion was an "attempt to further delay litigation and obtain a second bite at the apple." Mr. Power further states that there was no good cause to grant Ms. Ethier leave to file the motion where it was "uncontested" that the parties' child had special needs, and Ms. Ethier "had approximately 4 years to seek additional child support due to said special needs." Mr. Power never states when Ms. Ethier should have filed this motion or what "limited period" the trial court was extending under Rule 183 in granting her leave to file.

¶ 51    It is well settled that "[t]he right to modify child support is a statutory right, and parties are always able to petition the court upon a change in circumstances." *In re Marriage of Wittland*, 361 Ill. App. 3d 785, 788 (2005). Here, Ms. Ethier's motion was a request to deviate from the statutory guidelines made after the court found a change in circumstances that, under the guidelines, would result in Mr. Power's child support obligation being reduced by over $3000. Considering the interests of the children, it was not unreasonable to grant a request to file a motion to deviate from the guidelines under these circumstances. And while she did argue in her motion that the special needs of one of their children was a reason to grant such relief, that was, as she points out on appeal, one reason offered among many. In short, Mr. Powers fails to explain what deadline Ms. Ethier missed, for which the court was required to find "good cause" to extend, and we fail to see the merits of Mr. Power's "good cause" argument.

¶ 52    On the merits, Mr. Power first argues that the trial court improperly considered the earnings of his new wife as an enhancement to his income. Mr. Power cites to *In re Marriage of McBride*, where the husband argued that the court "improperly considered the income of his present wife in

determining the amount of child support" based on the court's explicit statement that it took his new wife's income into account. *McBride*, 166 Ill. App. 3d 504, 511 (1988). Ultimately, however, *McBride* does not support Mr. Power's argument. In *McBride*, although we noted a case from 1977 in which that court had said that the financial status of a current spouse should not be considered (*Robin v. Robin*, 45 Ill. App. 3d 365, 372 (1977)), we ultimately found the court's assessment appropriate despite the evidence that the court took the new spouse's income into account because the award was not based "solely on the combined salaries" of the husband and his new spouse. *McBride*, 166 Ill. App. 3d at 512.

¶ 53    More importantly, we have recognized since *McBride* that the "current trend" under Illinois law is that a new spouse's assets are relevant "to the extent the new spouse contributes to the expenses which would otherwise be paid by the parent." *Street v. Street*, 325 Ill. App. 3d 108, 114 (2002). While Mr. Power correctly points out that the court in *Street* was considering section 513 of the Act, which concerns awards of educational expenses as opposed to child support obligations, he does not explain why the underlying principle should not apply here. Section 505 of the Act specifically directs the court to consider the party's "resources"—not just their income or salaries—in determining whether to award child support under the statutory guidelines. See 750 ILCS 5/505(a)(2)(B) (West 2018) ("[t]he court shall determine child support in each case by applying the child support guidelines unless the court makes a finding that application of the guidelines would be inappropriate, after considering the best interests of the child and evidence which shows relevant factors including *** the financial resources and needs of the parents"). And, as we explained in *In re Marriage of Rushing*, "[t]he legislature's use of the term 'resources' in section 505(a)(2)(b) indicate[s] that the legislature intended to allow the court to consider all the money or property to which the supporting parent had access, including a spouse's income, in

determining whether to deviate from the minimum guidelines." *Rushing*, 2018 IL App (5th) 170146, ¶ 38.

¶ 54    The court's decision to award needs-based child support was also supported by sufficient evidence. Ample evidence was presented concerning the parties' standard of living during the marriage and their financial circumstances, including testimony that Ms. Ethier spent $1720 per month on expenses related to their children. There was also evidence that Mr. Power spends $2350 per month of his own personal funds on his child with his new wife while at the same time attempting to reduce his obligations to his three children with Ms. Ethier to $662, an outcome the court considered inequitable. In addition, the court's decision was accompanied by sufficient reasoning. The court was clear that it found a child support obligation of $662 would be "too little." The court noted that, "[i]t's just a matter of fact, you know kids have to be supported." The court explicitly stated it considered the "standard of living that the children would receive and the financial resources of the parties and the needs of the children" in finding an award of $662 in child support would be inappropriate.

¶ 55    Finally, we find that there is no evidence that the court's "personal dislike" of the new statutory guidelines improperly influenced its decision to deviate from them. The court did state on the record that it was "not a big fan of this present statute." But, in making its decision, the court clearly followed the law in determining what would be in the children's best interest. Accordingly, the court did not abuse its discretion in awarding Ms. Ethier $1900 per month in needs-based child support.

¶ 56              C. Retroactivity of Modification of Child Support Obligation

¶ 57    Mr. Power's final argument on appeal is that the court erred in denying his request to retroactively apply the modification of his child support obligation from the date he filed his third

20

petition to modify child support or a date shortly thereafter.

¶ 58    Under the Act, "the trial court may retroactively modify a child support award to the date of the filing of the petition to modify." *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 109 (2000). Mr. Power argues that because Ms. Ethier's fillings caused nine-months to elapse between the filing of his motion and the court's ruling, it was an abuse of discretion not to apply the modification retroactively. He claims the reason it took nine months to adjudicate this petition was because Ms. Ethier "concealed her employment status to the court during the hearing on March 29, 2019," and because the court delayed the proceeding to permit her to file her motion for needs-based child support.

¶ 59    Mr. Power filed his third petition on April 15, 2019, and the court held a hearing on the petition on October 11, 2019, six months later. Ms. Ethier's motion for needs-based child support, therefore, resulted in a three-month delay in postjudgment proceeding that had been ongoing—and continued by both parties from time to time—for three years. We do not find this delay to be so significant as to require the court to apply the modification retroactively.

¶ 60    A court has discretion in applying a modification of child support retroactively (*In re Marriage of Rogliano*, 198 Ill. App. 3d 404, 410 (1990)), and where Ms. Ethier's ultimately meritorious motion led to, at most, a three-month delay, it was not arbitrary, fanciful, or unreasonable to modify the obligation only prospectively.

¶ 61                                    IV. CONCLUSION

¶ 62    For the foregoing reasons, we affirm the decision of the trial court.

¶ 63    Affirmed.